UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SOU SAETERN,<br><br>          Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>          Defendant. | Case No. 1:24-cv-01174-EPG<br><br>FINAL JUDGMENT AND ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT<br><br>(ECF Nos. 1, 13, 18). |

This matter is before the Court on Plaintiff's complaint for judicial review of an unfavorable decision by the Commissioner of the Social Security Administration regarding his application for supplemental security income benefits.  The parties have consented to entry of final judgment by the United States Magistrate Judge under the provisions of 28 U.S.C. § 636(c), with any appeal to the Court of Appeals for the Ninth Circuit.  (ECF Nos. 8, 9).

Plaintiff argues as follows: "The RFC/MRFC are not supported by substantial evidence." (ECF No. 13 at 2).

Having reviewed the record, administrative transcript, parties' briefs, and the applicable law, the Court finds as follows.

\\\

## I. ANALYSIS

Plaintiff argues that "the ALJ harmfully erred by basing both the RFC and MRFC on the ALJ's own lay review of the raw objective medical evidence of record" because "there was no RFC or MRFC functional assessment opinion[.]" (ECF No. 13 at 8). Plaintiff points out the record contains a 2015 psychological report and a physical CE report, both of which were performed five years prior to the period at issue, and considered by the ALJ "for historical purposes" only. (*Id.* (citing A.R. 35)). Plaintiff argues that the lack of any medical source function-by-function opinion triggered the ALJ's duty to develop the record and obtain an RFC opinion from either a treating source or a consultative exam. (*Id.* at 9).

Defendant responds that the ALJ's duty to develop the record further was not triggered. (ECF No. 18 at 4). Defendant points out that Plaintiff does not argue that the record was ambiguous or inadequate—the two things that would trigger the ALJ's duty to develop. (*Id.*). Defendant argues that the ALJ provided "ample reasons in assessing the RFC" and "reasonably found that Plaintiff's claims of debilitating symptoms were not consistent with the overall record." (*Id.* at 5, 7). Defendant also argues that "not only are ALJs qualified to consider the evidence, analyze the opinion evidence, and assess the RFC accordingly, they are obligated to do so." (*Id.* at 9 (emphasis omitted)). Additionally, Defendant argues that "the lack of a persuasive opinion or prior administrative medical finding does not trigger a duty to develop the record." Similarly, Defendant argues that "the absence of a medical opinion opining as to Plaintiff's functional limitations does not automatically render the RFC unsupported by substantial evidence." (*Id.* at 10). Finally, Defendant argues that "Plaintiff's arguments also fail because they improperly shift his burden of proving disability to the ALJ." (*Id.* at 11).

### A.  Legal Standards

A claimant's RFC is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c) (defining an RFC as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs"). "In determining a claimant's RFC, an ALJ must consider all relevant evidence in the record,

including, *inter alia*, medical records, lay evidence, and the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (internal quotation marks and citations omitted).

In reviewing findings of fact with respect to RFC assessments, this Court determines whether the decision is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (internal citation omitted). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (internal citation omitted). Lastly, an ALJ has a duty to develop the record "only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001).

**B.     ALJ's Opinion**

The ALJ found that Plaintiff has the following residual function capacity:
> To perform medium work as defined in 20 CFR 416.967(b) except he cannot climb ladders, ropes or scaffolds and must avoid hazards such as work at unprotected heights or around moving machinery. He must avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. He is able to understand, remember and carry out simple instructions and should have no more than occasional public interaction.

(A.R. 29).

In making this determination, the ALJ first considered Plaintiff's subjective testimony. (A.R. 29, 31). Thereafter, the ALJ summarized the medical record. (A.R. 31-36).

Regarding Plaintiff's thyroid disorder (hyperthyroidism), the ALJ summarized Plaintiff's past medical history, including dysphagia (difficulty swallowing), but stated that the physical examination, medical testing, and labs found unremarkable and non-concerning results. (A.R. 31-32). The ALJ also noted that on November 2, 2021, Plaintiff also declined a referral to endocrinology and an ear, nose, and throat specialist at that time. (A.R. 32). Plaintiff was first prescribed thyroid medication on January 6, 2023. (*Id.*). Plaintiff did not see an endocrinologist

about his thyroid issues until August 2023. (*Id.*). At that time, the specialist noted that the lab results showed Plaintiff was now hypothyroid and advised Plaintiff to discontinue his current medication and undergo further testing. (*Id.* at 33).

At the initial Disability Determination Service assessment, Plaintiff advised the analyst that he does not have a mental condition and does not take any psychotropic medications. (*Id.*). The ALJ summarized that until an August 2022 psychiatric evaluation, Plaintiff's "psychiatric presentations were described as normal." (*Id.*). At that time, Plaintiff was diagnosed with Major Depressive Disorder, anxiety disorder, and an unspecified personality disorder. (*Id.*). During that visit, Plaintiff reported that a "UCLA clinic told him 'maybe ADHD' but he has never had any treatment." (*Id.*). The August 2022 reported also included an intake assessment from June 6, 2022, in which Plaintiff reported a history of anxiety and depression, but stated that did not receive previous treatment. (*Id.*).

The ALJ noted that during a follow up visit on October 13, 2022, the examiner noted a history of polysubstance use and believed Plaintiff was possibly "med seeking." (A.R. 34). Over the next year, Plaintiff had several follow up visits that involved adjustments of his psychiatric medications. (*Id.*).

The ALJ then stated that:
> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.
>
> As for the claimant's statements about the intensity, persistence, and limiting effects of his symptoms, they are inconsistent because medications for his heart rate irregularity and blood pressure are helpful. Thyroid medications have also provided good efficacy based on laboratory studies. Medical sources most frequently document normal physical and mental examinations, but for some hear rate irregularities, mood changes, and evasive behavior. At times, the claimant initiates medication changes prior to consulting his physician because he did not like the effects rather than poor efficacy. However, records also document improvement with medications under different formularies. The claimant is able to tend to his personal needs and care for his living environment, arrange for his own transportation with no documented missed appointments or failure to pick up

prescription medications. Finally, he has been able to attend higher education and complete certification in a cybersecurity program.

(A.R. 33).

The ALJ next considered the medical opinions in the record. (A.R. 35-36). First, the ALJ noted that the record contained a consultative internal medical examination from October 2015, in which the examiner noted lumbosacral musculoligamentous sprain/strain. The ALJ stated that this opinion was "not relevant" and considered it "only for historical purposes." (A.R. 35). The record also contained a consultative psychiatric exam from Plaintiff's prior application for Social Security benefits. (*Id.*). At that time, the examiner made no DSM-V diagnosis and found no significant limitations in any area of work-related functioning. (*Id.*). The ALJ said that this document was "not relevant to the current claim, but is considered only for historical purposes." (*Id.*).

Furthermore, at the initial disability determination, the medical consultant Dr. L. Bobba, M.D., found that although Plaintiff had documented hypertension, the cardiology workup was not significant. (*Id.*). Dr. Bobba concluded that Plaintiff had no severe physical impairments. (A.R. 36). The ALJ found this medical assessment generally persuasive, but not to adequately consider Plaintiff's thyroid condition and resulting fatigue. (*Id.*).

The ALJ next considered the medical evaluation from the initial disability determination psychiatric consultant, Dr. H. Leizer, PhD. (*Id.*). Dr. Leizer noted that Plaintiff had no treatment records or medications related to a mental health condition. (*Id.*). Dr. Leizer also made no findings under the paragraph B criteria. (*Id.*).

At the reconsideration level, Dr. J. McClain, Psy.D., affirmed Dr. Leizer's conclusions that Plaintiff has no severe mental impairment based on lack of evidence and Plaintiff's assertions that he has no mental problem. (*Id.*). Dr. McClain also made no findings under the paragraph B criteria of the Listings. (*Id.*). The ALJ found these assessments to be generally persuasive in that they reflect normal mental status examinations, but also found that they did not adequately consider Plaintiff's thyroid. (*Id.*).

Based on the evidence, the ALJ then explained the basis for his decision:
Overall, the claimant's subjective allegations of debilitating symptoms and

limitation precluding all work activity are not supported by the object evidence. His testimony at the hearing was not persuasive or consistent with the objective evidence such as the normal physical and mental examination findings throughout the record, with some notable exceptions. His activities of daily living include making his own meals, tending to his own living area and personal care, arranging his own transportation, and providing his own entertainment. He also has been able to attend higher education and complete certification in a cybersecurity program. These activities do not reflect an individual with such significant physical or mental limitations that all work activity is precluded. Finally, some of his alleged impairments have been responsive to medications and do not impose a disabling degree of limitation. While there are intermittent episodes of heart rate abnormalities and associated chest pain, these are not found to be attributable to serious cardiac impairment and symptoms are addressed only with medications, which the claimant reported as effective. The claimant does experience symptoms associated with a thyroid function abnormality, which has been diagnosed but has yet to be fully evaluated for a definitive course of treatment. Nonetheless, this condition has been present and symptomatic for at least 12 months and this and the side effects of medications have resulted in some functional deficits, but are not debilitating.

The undersigned finds the combined effects of impairments, documented complaints, positive examination findings, and medication side effects warrant some limitations to mental functioning and these are reflected in the established residual functional capacity. Specifically, due to a combination of his as yet uncontrolled mental health symptoms and hypothyroidism, the treatment for which is undetermined at the present, and noted fatigue and insomnia the undersigned found a capacity for medium exertion with hazard precautions are appropriate and address all medical and mental presentation. Even though headaches are not established as a medically determinable impairment, limitations to potentially triggering pulmonary irritants adequately address headache complaints. The mental status examinations are generally non-significant throughout the record, and his reported side effects noted on the exertional questionnaire is not consistent with medical evidence of record as the record shows that any time he experienced adverse side effects, he would stop use of the medication and reported doing so to his physician, which typically resulted in medication changes/adjustments. He reported Metoprotol worked well, although he thought it may have worsened his fatigue.

(A.R. 36-37). Based on the foregoing, the ALJ concluded that Plaintiff had residual function capacity to perform medium work with some restrictions. (A.R. 37).

### C. Discussion

#### 1. Duty to Obtain Medical Opinion

Plaintiff first argues that the ALJ harmfully erred in not obtaining a new medical opinion.

1  (ECF No. 13 at 8).

2  However, there is no duty to obtain a medical opinion in every case. *Reed v. Massanari*, 270 F.3d 838, 842 (9th Cir. 2001) (ALJ's have "broad latitude in ordering a consultative examination . . . the government is not required to bear the expense of an examination for every claimant."); *Hogan v. Kijakazi*, No. 1:20-CV-01787-SKO, 2022 WL 317031, at *10 (E.D. Cal. Feb. 2, 2022) (noting no "rule of general applicability that an ALJ must obtain an examining opinion in every case before rendering an RFC determination"). Additionally, "ALJs need not seek the opinion of a medical expert every time they review new medical evidence and make a RFC determination." *Bufkin v. Saul*, 836 F. App'x 578, 579 (9th Cir. 2021) (unpublished).

Nor is it necessarily error for the ALJ to determine a residual functional capacity without a medical opinion. Under 20 C.F.R. § 416.927(d)(2), the ALJ has the final responsibility for determining whether a Social Security applicant is impaired. Moreover, the Ninth Circuit has held that "[i]t is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (2001) (citing 20 C.F.R. § 404.1545). Additionally, there "is a presumption that ALJs are, at some level, capable of independently reviewing and forming conclusions about medical evidence to discharge their statutory duty to determine whether a claimant is disabled and cannot work." *Farlow v. Kijakazi*, 53 F.4th 485, 488 (9th Cir. 2022).

Thus, based on the precedent outline above, it was not necessarily error for the ALJ to determine the RFC without obtaining a more recent medical opinion.

### 2. ALJ's Review of Medical Record

The Court then turns to whether the ALJ went beyond their expertise in interpreting medical evidence in this case. *See Padilla v. Astrue*, 541 F. Supp. 2d 1102, 1106 (C.D. Cal. 2008) ("[A]s a lay person, an ALJ is not qualified to interpret raw medical data in functional terms.") (quoting *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam) (finding error in ALJ's Step Two determination that claimant did not have severe impairments because it was not supported by any reliable medical opinion); *Miller v. Astrue*, 695 F.Supp.2d 1042, 1048 (C.D.

1  Cal. 2010) (citing *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975)) (finding that
2  the ALJ improperly "acted as his own medical expert" by "substituting his opinion for [the
3  treating doctor's] professional interpretation of the clinical testing"); *Vaughn v. Berryhill*, 242 F.
4  Supp. 3d 998, 1008 (E.D. Cal. 2017) ("[A]n ALJ is not allowed to use his own medical judgment
5  in lieu of that of a medical expert."); *Rose P. v. Comm'r of Soc. Sec.*, 414 F.Supp.3d 1339, 1346
6  (W.D. Wash. 2019) (the ALJ was not "qualified" to explain how raw medical data consisting of
7  "clinical observations [by other providers] of lack of swelling and tenderness, full strength and
8  range of motion, and negative straight leg raise test" conflicted with medical opinion).

       Notably, Plaintiff does not point to any specific portion of the opinion or to specific medical documents that went beyond the ALJ's expertise and required a medical opinion to interpret.  (*See generally* ECF No. 107).  Nor does Plaintiff disagree with the ALJ's summary of any medical record, such as the ALJ's summary of various records as showing only normal symptoms, etc.  (*See generally id.*).

       The Court has reviewed the ALJ's opinion of medical records and finds that the ALJ had sufficient expertise to draw conclusions from the medical documents in the record.  For example, the ALJ considered medical records indicating Plaintiff had labs within normal limits on several occasions.  (A.R. 32 (citing, *inter alia*, Exhibit 14F, p. 56) (stating "Labs are normal for Thyroid panel.")). The ALJ also noted that Plaintiff declined an endocrinology referral in 2022, did not start taking thyroid medication until January 2023, and did not see an endocrinologist until August 2023.  (A.R. 32-33).

       In regard to Plaintiff's mental health conditions, the ALJ found that "[r]eviews of systems document no mental complaints."  (A.R. 33 (citing Exhibits 6F, pp. 4, 15, 40, 54, 74, 84; 12F, pp. 59, 65)).  The ALJ also found that until an August 2022 psychiatric examination, Plaintiff's "psychiatric presentations were described as normal."  (A.R. 33 (citing Exhibits 6F, pp. 4, 11, 16, 28, 35, 41, 47, 55, 60, 64, 75, 80; 9F pp. 5, 12, 18, 24, 30; 12F, pp. 5, 57, 60, 66; 14F, pp. 11, 20, 28, 35).  Review of Plaintiff's medical records prior to August 2022 indicates that Plaintiff's doctor determined that Plaintiff was "Negative" for "Anxiety, Depression, and Insomnia" and then indicated in follow up visits that Plaintiff's "[c]ognitive status has not changed."  (A.R. 430,

437, 442, 454, et seq.).  The ALJ also summarized that during a follow up visit on October 13, 2022, the examiner noted Plaintiff's history of polysubstance use and believed Plaintiff was possibly "med seeking."  (A.R. 34).

Although the ALJ did rely on these records, they did not require medical expertise to understand.

Moreover, the ALJ relied on evidence other than the medical records, which did not require a medical opinion.  For instance, the ALJ considered that at the initial Disability Determination Service assessment, Plaintiff advised the analyst that he did not have a mental condition and did not take any psychotropic medications.  (A.R. 33 (citing Exhibit 1A, pp. 5)). The ALJ also noted that Plaintiff was able to pursue some higher education and complete a cybersecurity training program.  (A.R. 30).  Additionally, although Plaintiff said that he takes medication for Attention Hyperactivity Disorder ("ADHD"), he was unable to recall the specific medications during his hearing.  (*Id.*).[1]

Therefore, the Court finds that there was no duty to develop the record by obtaining a medical opinion.  Moreover, the Court finds that the RFC is supported by substantial evidence.

## II.    CONCLUSION AND ORDER

Based on the above reasons, the decision of the Commissioner of Social Security is affirmed. The Clerk of Court is directed to enter judgment in favor of the Commissioner of Social Security and to close this case.

IT IS SO ORDERED.

Dated:   **April 22, 2025**                     /s/ Erica P. Grosjean
                                                UNITED STATES MAGISTRATE JUDGE

---

[1] During Plaintiff's psychiatric exam in August of 2022, he reported to the examiner that a "UCLA clinic told him 'maybe ADHD' but he has never had any treatment."  (A.R. 33).  However, at the hearing, Plaintiff stated he was previously diagnosed with ADHD at UCLA in 2010 when he was a student.  (A.R. 31).